**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

CHRIST'S HOUSEHOLD OF FAITH,

        Plaintiff,

v.

RAMSEY COUNTY, SUSAN
GAERTNER, in her individual and
official capacity as Ramsey County
Attorney, and ROBERT FLETCHER,
in his individual and official capacity
as Ramsey County Sheriff,

        Defendants.

**MEMORANDUM OF LAW AND ORDER**
Civil File No. 08-5450 (MJD/AJB)

Steven P. Aggergaard, Bassford Remele, PA, Counsel for Plaintiff.

Thomas E. Ring, Ramsey County Attorney's Office, Counsel for Defendants.

## I.     INTRODUCTION

This matter came before the Court on Defendants Ramsey County, Susan Gaertner, and Robert Fletcher's (collectively "Defendants") motion to dismiss for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. For the following reasons, the Court will grant Defendants' motion.

1

## II. DISCUSSION

### A. Factual Background

#### 1. The Parties

Plaintiff Christ's Household of Faith ("CHOF") is a religious community incorporated as a nonprofit corporation under Minnesota and federal law. Reverend Donald O. Alsbury has led the community, currently comprised of approximately 270 adults and 215 children, since its founding in 1967. Defendant Ramsey County is a political subdivision of the State of Minnesota, Defendant Susan Gaertner is the Ramsey County Attorney, and Defendant Robert Fletcher is the Ramsey County Sheriff. CHOF has sued Gaertner and Fletcher in both their official and individual capacities.

CHOF is organized around a religious principle that requires its members to relinquish all real and most personal property and to sever ties "with their previous worldly lifestyles." (Compl. ¶ 26.) The community derives its beliefs from a number of Biblical passages that it has interpreted as calls to communal living. In keeping with these principles of communal living, the community owns a number of businesses staffed entirely with members of the church. No member receives a salary for his or her work at these businesses. Instead, all

members receive a stipend from CHOF's common treasury in order to procure basic necessities. Presently, each and every member of the community receives $43.55 every other week.

### 2. The Dispute

The facts of this case are closely connected to the 1987 divorce of Patricia Rooney and Michael Rooney and the subsequent court battle over custody of their children. The Rooneys were married in 1964 and together they were among the original members of CHOF. (Compl. ¶ 33.) In 1974, the Rooneys left the community, but in 1980 Michael Rooney returned as a member. (Id. ¶ 34.) Patricia Rooney returned to the community in 1981. (Id. ¶ 35.) Over the next few years, she repeatedly left and returned to the community. (Id. ¶ 36.) Finally, in 1987, Patricia Rooney left CHOF for good and took four of her children fathered by Michael with her. (Id.) At the time of the divorce, the Rooneys had eleven children total, eight of whom were minors. (Id. ¶ 37.)

The fact that CHOF members do not receive a traditional salary for their jobs at CHOF-owned businesses became an issue when Patricia Rooney initiated the divorce proceedings. In 1988, the Ramsey County District Court ordered Michael Rooney to pay $600.52 per month in child support and $250 per month

in spousal maintenance, for a total of $850.52 per month.  The court based its determination on a calculation that the value of Michael Rooney's services to CHOF was $24,000 per year.  (Compl. ¶ 40.)  A subsequent Minnesota Court of Appeals opinion mentions the fact that, at the time of the 1988 judgment, Patricia Rooney was receiving welfare assistance from Ramsey County.  See Rooney v. Rooney, 669 N.W.2d 362, 366 (Minn. Ct. App. 2003) ["Rooney II"].  The Rooney II decision includes an in-depth discussion of various other facts relating to the Rooneys' divorce that were not included in the Complaint.

In 1990, the Ramsey County court administrator entered an order directing CHOF, as a "payor of funds" under the relevant Minnesota statute, Minn. Stat. § 518.611, to forward the $850.52 per month to the Ramsey County Department of Community Services and to further withhold $4,375 in arrearages.  The 1990 order also stated that Patricia Rooney "may utilize the Ramsey County Department of Community Services to collect and enforce child support and spousal maintenance."  (Compl. ¶ 42.)  Minn. Stat. § 518A.26, subd. 18 authorizes Ramsey County to act on behalf of the Minnesota Department of Human Services' Child Support Enforcement Division, a role that includes assisting custodial parents with the collection of support payments.

4

In September 1990, CHOF began forwarding some money to Ramsey County—the total monthly payment amount is unclear in the Complaint—which it considered as support payments only. In a 1991 hearing in Ramsey County, at which various CHOF officers were ordered to appear, an exchange between the officers and the court took place in which it was clear that, if the children did not receive their child support payments, the officers faced jail time. (Compl. ¶ 45.) CHOF continued to gift "payments to the county as to Michael Rooney's support obligation" until "the threat of 'utilization' of state actors' collection services had seemed to cease" in 1997. (Id. ¶ 49.) The total amount of these payments was $25,069.40. Finally, after a number of hearings that took place throughout 1991, on December 24, 1991, the Minnesota Court of Appeals ordered the state district court to hold a hearing to determine whether CHOF had waived its right to an evidentiary hearing, and if not whether the community was an employer and if so what the amount of Michael Rooney's support and maintenance should be. (Id. ¶ 48.; Rooney v. Rooney, 478 N.W.2d 545 (Minn. Ct. App. 1991) ["Rooney I"].) For reasons that are unclear in the Complaint and in the parties' submissions to the Court, the hearing that was ordered in Rooney I did not take place until 2002.

CHOF maintains in its Complaint that it "has never made any payment related to spousal maintenance and does not intend to make any further payments of any kind." (Compl. ¶ 60.) Over the 20-plus years since the Rooneys' divorce, Michael Rooney and CHOF have been involved in a number of state court cases contesting, among many other things, the determinations that Michael Rooney's services to CHOF are worth any amount of money and that CHOF is liable under Minnesota law for child support withholding purposes.

The Complaint lists seven counts against Defendants. Counts I and II state claims related to various sections of federal and Minnesota law. Count I states that CHOF is entitled to relief "on a finding that Defendants' coercive enforcement of the Judgment would violate" federal law. (Compl. ¶ 74.) In Count II, CHOF claims that the Minnesota statutory scheme that authorizes state actors to engage in "collection services" for child support and spousal maintenance enforcement, and includes a statutory presumption of contempt in cases where a "payor of funds" intentionally fails to comply with court-ordered withholding requirements, violates federal statutory and constitutional law. (Compl. ¶ 78.) Counts III through VIII allege various violations of the United States Constitution. CHOF alleges that it is entitled to heightened protection and

declaratory and injunctive relief under 42 U.S.C. § 1983 and the First and Fourteenth Amendments.

### B. Procedural Background

On September 29, 2008, the Ramsey County District Court entered judgment in favor of Patricia Rooney and against CHOF for support and maintenance arrearages in the amount of $234,945.85. (Compl. ¶¶ 58-59; Aggergaard Aff. Ex. C.) CHOF requested a thirty day stay, which the district court granted by altering the order before signing it. (See Aggergaard Aff. Ex. C.) CHOF then filed this action in federal court on October 10.

Defendants filed their motion to dismiss on November 3. Two weeks later, they filed an amended motion to dismiss, which corrected a typographical error in the first motion. Defendants move the Court to dismiss the Complaint with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In particular, Defendants argue that the Rooker-Feldman doctrine provides that this Court does not have subject matter jurisdiction over the case because CHOF is asking the Court to review and reject the state court's numerous decisions in the Rooneys' divorce and custody proceedings.

### C. Legal Standard

Federal Rule of Civil Procedure 12(h)(3) dictates that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  "Subject matter jurisdiction is a threshold requirement which must be assured in every federal case." Turner v. Armontrout, 922 F.2d 492, 293 (8th Cir. 1991).  As established by the Rooker-Feldman doctrine, federal district courts do not possess subject matter jurisdiction over challenges to state court decisions.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923).

In Feldman, the Supreme Court of the United States formulated a rule which distinguishes general constitutional challenges to state laws and regulations, over which federal district courts have jurisdiction, from requests for review of specific state court decisions, over which federal district courts have no jurisdiction.  As explained by the Court, when the federal claims are "inextricably intertwined" with state court decisions in state judicial proceedings, they fall outside of the federal court's jurisdiction.  See Feldman, 460 U.S. at 486-87.

Recognizing that lower courts previously construed the Rooker-Feldman

doctrine "to extend far beyond the contours of the Rooker and Feldman cases," the Supreme Court recently clarified that the Rooker-Feldman doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284; see Lance v. Dennis, 546 U.S. 459, 460 (2006).  The United States Court of Appeals for the Eighth Circuit has since explained that

> A district court is not deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court.  Rather, Rooker-Feldman is implicated in that subset of cases where the losing party in a state court action subsequently complains about that judgment and seeks review and rejection of it.

Skit Intern., Ltd. v. DAC Techs. of Arkansas, Inc., 487 F.3d 1154, 1157 (8th Cir. 2007) (internal citations omitted).  The Second Circuit has extended the logic behind the Rooker-Feldman limitation to hold that "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by the state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005).

In sum, after Exxon Mobil there are four requirements for the application of the Rooker-Feldman doctrine: (1) the federal court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state court judgment must have been rendered before the district court proceedings commenced.  See Skit Intern., 487 F.3d at 1156-57.

**D. Analysis**

CHOF's obstinate refusal to comply with the state court's decision mandating payment of long-overdue child support and spousal maintenance to Patricia Rooney presents the Court with a classic example of the type of case that Rooker-Feldman is meant to cover.  This Court will not allow CHOF to succeed in its attempt to perform an end run around the state court's decision.

CHOF unsuccessfully argues that the Rooker-Feldman doctrine is inapplicable to this case for two main reasons.  First, CHOF argues that the present action was commenced in federal court before the state court judgment was rendered.  Second, CHOF argues that the present action raises federal legal issues independent from the issues raised in the previous state court cases.  In its submissions to the Court, CHOF stresses that it is not challenging the September

2008 award of $234,945.85 to Patricia Rooney.  Instead, CHOF argues that its claims are related to enforcement of the court's judgment.  CHOF also briefly entertains an argument that it was not a party to the state court proceeding.  CHOF's arguments are unpersuasive.

As for its argument that it commenced the federal action before the state court rendered judgment, CHOF claims that "the action was commenced before the state-court stay expired and nearly two months before judgment was entered."  (Pl.'s Mem. in Opp. at 16.)  There are at least two problems with this argument.  To begin, CHOF writes in ¶ 59 of the Complaint that, "On September 29, 2008, the Ramsey County District Court ordered that judgment be entered in favor of Patricia Rooney and against Christ's Household of Faith, Inc. in the amount of $234,945.85 after a 30-day stay."  Indeed, the state district court issued its findings of fact, conclusions of law, and order directing the District Court Administrator to enter judgment on September 29, 2008.  (Aggergaard Aff. Ex. C.)  CHOF disingenuously tries to skirt this fact by adhering to an unduly constrained definition of "render," in the context of "render judgment."

Contrary to CHOF's position, however, "judgment" refers to "[a] court's final determination of the rights and obligations of the parties in a case."  Black's

Law Dictionary (8th ed. 2004).  In the context of a judgment at law, "final" means "not requiring any further judicial action by the court that rendered judgment to determine the matter litigated."  Id.  The state district court issued its final determination of the rights of the parties on September 29, 2008.  In other words, it rendered judgment on that date.  Furthermore, CHOF's argument that the state court did not "render" its judgment because it granted CHOF's request for a thirty day stay would create an incentive for state court losers to repeat this tactic.  As soon as they learn of an unfavorable result in state court, state court losers could request a stay and then rush to file in federal court.

With respect to its argument that it raises an independent issue in the federal case, CHOF cites to the Vermont Supreme Court case of Hunt v. Hunt, 648 A.2d 843 (Vt. 1994), for the proposition that there is a difference between a determination of child support and spousal maintenance liability and enforcement of that liability.  In Hunt, the Vermont Supreme Court decided a case involving a nonprofit religious community that was organized according to similar religious principles espoused by CHOF.  The Vermont court addressed a child support obligation in relation to a church member whose religious beliefs forbade him from possessing personal property.  The court held that the state did

not show that its enforcement mechanism of contempt and jail for noncompliance with a support obligation was the least restrictive means to further its interest in enforcing the child support obligation. See 648 A.2d at 853-54.

CHOF fails to address one obvious distinction between Hunt and the present case. In Hunt, the Vermont court reviewed a situation where an individual had been ordered to pay child support. The defendant in that case argued that he failed to comply with his support obligations due to an inability to pay because his religious beliefs kept him from owning personal property. In the state court proceedings from the present case, the church itself has been ordered to pay. While there are similar religious principles at play, the Minnesota courts have already decided that the church is a "payor of funds" under Minnesota law. The state court's decision rests on a finding that CHOF is able to pay.

To the extent that CHOF raises an argument that it is not a party to the state court proceedings, the Minnesota courts have already ruled that they are. While it is true that CHOF is labeled as a third party respondent in many of the

state court cases at issue, a lengthy footnote from Rooney II directly addresses the issue of whether CHOF is a party to the state court proceeding:

> As exemplified by the child support magistrate's February 2002 order addressing the "joinder" of CHOF as a party to this proceeding, the record, the parties, and the court are less than clear about when CHOF became a party to these proceedings. It is clear however, that any objection CHOF had to the court exercising personal jurisdiction over it was waived when, in August 1990, its attorney sent a letter to the county stating that complying with all aspects of the May 1990 withholding order was not possible, that CHOF and others named in the withholding order were not parties to the proceeding, but not objecting to the existence of the withholding obligation and expressing CHOF's "interest in fully complying with the Court's order." It was CHOF's lack of full compliance with the withholding order that prompted the 1991 proceedings and the appeal in Rooney I, which resulted in the remand from which this appeal is taken. . . . Because CHOF has been a party to this proceeding (at least for withholding purposes) since before the first appeal was taken, there was no need to "join" CHOF on remand.

Rooney II, 669 N.W.2d at 373-74 n.1 (citations omitted). Thus, the Minnesota Court of Appeals has already decided that CHOF has been a party to the state court proceedings since at least 1990.

CHOF further cites to recent Eighth Circuit case law that cautions against applying Rooker-Feldman too broadly. See MSK Eyes Ltd. v. Wells Fargo Bank, 546 F.3d 533, 539 (8th Cir. 2008); Merkl v. Pendleton, No. 06-1446, 2008 WL 4821640, at *1 (8th Cir. Nov. 7, 2008). In each of these cases, the Eighth Circuit

14

decided that the federal action at issue did not seek review and rejection of the related state court judgment. However, each case is distinguishable from the facts in this case. In MSK Eyes v. Wells Fargo, the federal plaintiff sought federal court review of a number of claims relating to breach of contract issues. The parties entered into a series of lawsuits in state courts, one of which culminated in a Mutual Release signed by one of the plaintiffs. Wells Fargo subsequently obtained a judgment in another state court case against the same plaintiff. The Eighth Circuit ruled that a resulting federal lawsuit did not require the federal district court to overturn the state court decision because the state court's judgment would still be intact even if Wells Fargo had breached the Mutual Release by obtaining the judgment. Because the plaintiffs alleged unlawful conduct in Wells Fargo's act of seeking and executing the state order, the Eighth Circuit found that their claims were independent and not barred by Rooker-Feldman. See MSK Eyes, 546 F.3d at 539. In the present case, CHOF does not make a similar argument that the very act of Defendants' seeking and executing the state order outlining the support obligation violates some preexisting contract between Plaintiffs and Defendants.

CHOF also relies on the Eighth Circuit's decision in Riehm v. Engelking, 538 F.3d 952 (8th Cir. 2008).  In Riehm, a high school student and his mother filed a § 1983 action against Cook County and some of its employees, claiming various violations of the United States Constitution and Minnesota state law after a state court issued an ex parte order for the seizure and detention of the student for psychiatric evaluation.  The student had previously submitted a series of violent essays to a teacher that detailed elaborate murder-suicide fantasies inspired by the Columbine school shooting.  The Eighth Circuit held that Rooker-Feldman did not apply to the plaintiffs' Fourth Amendment claims because the student did not challenge the ex parte order and was not a party to the ex parte petition. See Riehm, 538 F.3d at 965.  Rather, the Eighth Circuit found that the plaintiffs' federal case alleged unconstitutional actions by the state actor who obtained the ex parte order.  See id.  Riehm is easily distinguished from the present case if only because, unlike the plaintiffs in that case, CHOF has been a party to the many state proceedings in this case.

As mentioned above, the Second Circuit's opinion in Hoblock provides the Court with a well-reasoned justification for applying the Rooker-Feldman doctrine to CHOF's claims.  To repeat, the Hoblock court wrote that "a federal

16

suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by the state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Hoblock, 422 F.3d at 88. As applied to the present case, CHOF ostensibly complains only of a third party's actions—namely, the imminent actions of Defendants if and when they execute the Ramsey County District Court order requiring CHOF to pay $234,945.85 in arrearages to Patricia Rooney. Indeed, at oral argument and in its written submissions to the Court, CHOF repeatedly stressed that it is challenging only the enforcement of the state court's order, and not the order itself. Here, like in Hoblock, any actions that Defendants take to enforce the state court judgment will have been produced by the state court judgment. In other words, if not for the state court judgment, Defendants would have no obligation to act in a manner adverse to CHOF's alleged interests in this matter.

     In conclusion, after carefully considering the four elements of Rooker-Feldman, the Court finds that the doctrine clearly applies to the present matter. CHOF is a state court loser. CHOF complains of an injury caused by the state court judgment. CHOF invites the federal district court to review and reject that

judgment.  And the state court rendered judgment before the federal district court proceedings commenced.

After more than two decades of on-and-off litigation, multiple Minnesota courts have reviewed the facts of this case.  They have all invariably decided that Patricia Rooney deserves child support and spousal maintenance payments.  The Court hopes that its decision in this case will bring this matter to rest.  After exhausting many available avenues of appeal, CHOF can no longer use dilatory litigation tactics to avoid paying the support that it owes.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket Nos. 10 & 11] is **GRANTED**.  The Complaint is **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Rooker-Feldman doctrine.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  May 17, 2009                                          s/ Michael J. Davis
                                                             Michael J. Davis
                                                             Chief Judge
                                                             United States District Court